## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **EUGENE ABRAMOV**, <br><br> Plaintiff, <br><br> *v.* <br><br> **SHAWN BULLARD**, et al., <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 24-4172-KSM** |

### MEMORANDUM

**MARSTON, J.**                                                    **August 18, 2025**

Pro se Plaintiff Eugene Abramov brings claims against his former landlords, Defendant Shawn Bullard and Bullard's companies, Defendants 1620 Cecil B. Moore LLC and Konkrete Investments LLC (collectively, the "Company Defendants," and with Bullard, the "Landlord Defendants").[1]  Abramov claims that shortly after he moved into his leased apartment, he was met with unjustified fees, uninhabitable conditions, the Landlord Defendants' indifference, and eventually, eviction.  In this lawsuit, he brings claims for, among other things, violations of the Fair Debt Collection Practices Act ("FDCPA"), negligence, fraud, and wrongful eviction.  (Doc. No. 34.)  Defendants have moved to dismiss Abramov's FDCPA claims against Konkrete Investments[2] and all claims against Bullard.  (Doc. No. 36.)  Abramov opposes the motion. (Doc. No. 38.)  For the reasons discussed below, the motion is denied.

---

[1] Abramov also sued Baritz Law Associates LLC, the law firm that pursued debt collection on the Landlord Defendants' behalf, but the parties later stipulated to the law firm's dismissal.  (*See* Doc. Nos. 37, 39.)

[2] Although the Landlord Defendants move to dismiss the FDCPA claims as against all of them, the Second Amended Complaint brings FDCPA claims against only Konkrete Investments.  (*See* Doc. No. 34 at 17; *see also* Doc. No. 38 at 8.)

I.      BACKGROUND

On April 16, 2023, Abramov entered into a lease for 1620 Cecil B. Moore Ave, Apartment 003, Philadelphia, PA 19121 (the "Premises").  (Doc. No. 24 at 49.)  Although the lease lists the landlord as Konkrete Investments LLC, "1620 Cecil B Moore LLC" is typed into the landlord's signature fields.  (*Id*. at 51, 59.)  Abramov pleads that defendant Bullard owns both Konkrete Investments LLC and 1620 Cecil B Moore LLC.  (Doc. No. 34 at 1–2.)

Shortly after signing the lease, Abramov transferred $1,200 as a security deposit to nonparty Greater Philly Management through Mr. Kenneth Anyanwu, a real estate agent negotiating on behalf of the Landlord Defendants.  (*Id*. at 2.)  And on August 20, 2023, Abramov "took possession of" the Premises.  (*Id*. at 31.)  From the beginning, Abramov faced unanticipated fees, uninhabitable conditions, and an inability to meaningfully communicate with the Landlord Defendants or their authorized representatives.

A.      Late Fee for Rent and Utilities

On September 6, 2023, just a few weeks after moving in, Abramov was charged a $100 late fee, allegedly because "rent and utilities [were] not received in full."  (Doc. No. 24 at 77; Doc. No. 34 at 31.)  Abramov wished to dispute the charge, arguing that the lease permits late fees only for tardy payments of rent, and Abramov had paid that month's rent in a timely fashion.  (Doc. No. 34 at 30–33.)  But because the lease did not include a "valid address or contact information" for the Landlord Defendants and Abramov had not otherwise been given contact information for them, he struggled to find an address to which he should send his dispute. (*Id*. at 3, 7.)

On September 25, 2023, Abramov sent a dispute letter by certified mail to Konkrete Investments LLC at 1109 Lehigh Ave, Philadelphia, PA 19133 and to Bullard at 2317 E. Firth Street, Philadelphia, PA 19125, an address listed as Bullard's on an initial regulatory filing for

Konkrete Investments LLC. (*Id*. at 6–7, 30–33.) Both addresses were also included on Konkrete Investments's Articles of Incorporation with the Pennsylvania Department of State. (Doc. No. 24 at 83–86, 89–90.) Both letters were returned as undeliverable, with the U.S. Postal Service writing "VACANT" on the envelope to Konkrete Investments's Lehigh Address. (*Id*. at 87–88.)

Abramov also sent a copy of the letter to the property management company for the Premises, Watchmen Property Management LLC, at 1161 W. Montgomery Ave., Philadelphia, PA 19121, which is 1620 Cecil B. Moore, LLC's registered address with the Pennsylvania Secretary of State. (Doc. No. 34 at 7, 30.) It is unclear whether the letter was delivered. Abramov notes, however, that he also contacted Watchmen Property via text message about the improper fees. (*Id.* at 8.) He received a response telling him to contact Konkrete Investments via email at watchmenpm@gmail.com. (*Id.*) But when Abramov sent a copy of his dispute letter to the email address, he received an automatic reply from "Shawn Bullard," and no further response to his concerns. (*Id.*)

Abramov did not give up there; he then visited the 1611 W. Montgomery Ave. address on October 2, 2023. (Doc. No. 34 at 7.) There, he met Maggie Bullard, who Abramov identifies as "an employee of . . . Watchmen" and an owner of Konkrete Investments. (*Id.* at 2, 8.) According to Abramov, when he spoke to Maggie Bullard about his concerns, she "denied she was the landlady" and "denied [the Montgomery Ave.] address was associated with [Abramov's] landlord, then admitted it, then denied it again." (*Id*. at 7.)

In the months that followed, Abramov repeatedly requested the Landlord Defendants' proper contact information from Maggie Bullard and from other individuals associated with the Landlord Defendants, but his efforts proved fruitless. (*Id*. at 7–9.)

### B.    Sewage Water Flooding the Premises

While Abramov was disputing the late fee charged to his account, he was also dealing

with sanitation issues at the Premises.  On September 15, 2023, less than a month after he moved

into the apartment, the Premises flooded with sewage water.  (Doc. No. 34 at 23.)  Abramov

contacted Watchmen Property, who sent a plumber to address the flooding at the Premises that

same day.  (Doc. No. 24 at 103.)  The following morning, however, Abramov noticed that water

was still pooled under the floorboards.  (*Id.* at 103–05.)  He again notified Watchmen Property,

but this time, he received no response.  (*Id.*)

A few months later, on March 4, 2024, the Premises once again flooded with sewage

water, and when inspecting the damage, Abramov "discovered an abundance of black mold

growing under the laminate" flooring.  (*Id.* at 18, 118.)  Abramov called Maggie Bullard and told

her that he would be placing all future rent payments in escrow "due to a material breach of the

implied warranty of habitability."  (Doc. No. 34 at 12.)  On April 1, 2024, Abramov, through

text, similarly notified Watchmen Property that he would not be paying that month's rent, and

instead, would be placing his payment in escrow.  (Doc. No. 24 at 119–20.)  As justification for

placing the rent in escrow, Abramov listed grievances that included, among others, "repeated

flooding of sewage water on the studio's floor, a cockroach infestation, mold, bad smell, and

garbage perpetually strewn in front of the building."  (Doc. No. 34 at 13.)  He also noted that the

issues were compounded by the lack of an "adequate means" for communicating with the

Landlord Defendants.  (Doc. No. 24 at 120.)  On April 4, 2024, Watchmen Property responded to

Abramov's message, contesting some of his assertions, but ignoring his stated intent to place

future rent payments in escrow.  (*Id.*)  Abramov replied on April 8, 2024, reaffirming his

assertions and his decision to place rent in escrow, which again went unacknowledged.  (*Id.* at

121–22.)

### C.    Abramov's Threatened Eviction

The next communication that Abramov received from Watchmen Property came on May 13, 2024.  Abramov received an email titled, "10 Day Notice to Quit – Unpaid Rent," which demanded payment of $2,450 in past due rent and warned that if he failed to make full payment within ten days Abramov's "right of possession to the property w[ould] be terminated and eviction proceedings w[ould] begin immediately."  (Doc. No. 34 at 13; Doc. No. 24 at 167.)  The email was listed as being from "Watchmen Property Management" and when Abramov expanded the sender designation, it showed an email address and domain name of: <konkreteinvestments-mail-system@konkreteinvestments.mailer.appfolio.us>.

Abramov responded to the May 13, 2024 email, explaining that the owed rent had been placed in escrow, as he was "waiting on the landlord to make the unit habitable," and when he did not hear back from Watchmen Property, he exited the Premises on May 23, 2024.  (Doc. No. 34 at 13; Doc. No. 24 at 168.)  Abramov alleges that his $1,200 security deposit was never returned to him, nor was he provided any explanation regarding the forfeiture of the security deposit.  (Doc. No. 34 at 3.)

A couple weeks later, around June 7, 2024, Attorney Kenneth Baritz of Baritz Law Associates LLC, on behalf of the Landlord Defendants, sent Abramov a letter titled "Notice to Vacate" which demanded the payment of $4,175 in past due rent or Abramov's eviction from the Premises within thirty days.  (*Id*. at 15.)  After receiving that letter, Abramov began conversing with Heather Fitzwater, an employee of Baritz Law Associates LLC, over email regarding the demands in the letter and notifying her that he would sue if settlement was not reached.  (*Id*. at 15–16.)

D.     **Procedural History**

When the parties failed to amicably resolve the matter, Abramov followed through on his threat, filing a complaint against the Landlord Defendants in this Court on August 12, 2024. (Doc. No. 1.)  The Court held a preliminary pretrial conference on January 21, 2025 (Doc. No. 20), after which Abramov filed an amended complaint (Doc. No. 24).  The parties then attended a settlement conference with the Honorable Carol Sandra Moore Wells, Magistrate Judge, on February 12, 2025 (Doc. No. 31), after which Abramov filed his Second Amended Complaint (Doc. No. 34).

The Second Amended Complaint brings federal claims for violation of the FDCPA and state law claims for recovery of Abramov's security deposit under 68 Pa. Stat. & Cons. Stat. § 250.12, for common law negligence, and for municipal violations including illegal eviction pursuant to Phila. Code § 3901(4)(e) and fraudulent rent collection pursuant to Phila. Code § 9-804(5).  (*Id*.)  On March 17, 2025, the Landlord Defendants moved to dismiss Abramov's Second Amended Complaint.  (Doc. No. 36.)  In their motion, they argue that Abramov's FDCPA claims fail because he "has not sufficiently alleged that [Konkrete Investments] is a debt collector or how [Konkrete Investments] violated the FDCPA in attempting to collect a debt." (*Id*. at 3.)  Alternatively, they argue that all claims against Bullard should be dismissed because Abramov's allegations do not justify piercing the corporate veil and finding Bullard personally liable for the allegedly wrongful acts of his companies.  (*Id*.)  On March 31, 2025, Abramov filed his response in opposition to the motion to dismiss, arguing that Konkrete Investments qualifies as a debt collector under the false-name exception provided in 15 U.S.C. § 1692a(6) and that veil piercing is necessary to avoid injustice.  (Doc. No. 38.)

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a plaintiff does not need to include "detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must "provide the grounds of his entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted).

In ruling on a motion to dismiss, the court must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from those allegations. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Because Abramov is proceeding pro se, we liberally construe the allegations in his Second Amended Complaint.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

"As a general matter," the court "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  That said, the court "may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

III.    **DISCUSSION**

Although the Landlord Defendants purport to seek dismissal of the Second Amended Complaint in its entirety against all three of them (*see* Doc. No. 36 at 3), their motion argues for dismissal of only the FDCPA claims against Konkrete Investments[3] and, in the alternative, dismissal of all claims against Bullard for failure to allege facts to support piercing the corporate veil (*see generally id.*).  Accordingly, the Court focuses on those two arguments.

A.    **FDCPA Claims Against Konkrete Investments**

The Court begins with Abramov's FDCPA claims.  To state a claim under the FDCPA, Abramov must allege that "(1) [h]e is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a debt as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (quotation marks omitted).  The Landlord Defendants do not challenge the first or third elements.  Instead, they focus on the second and fourth, arguing that Abramov's FDCPA claims should be dismissed because Abramov fails to plead sufficient facts to plausibly show:  (1) that Konkrete Investments qualifies as a debt collector under the FDCPA, or (2) that it violated a provision of the FDCPA in attempting to collect Abramov's outstanding rent.  (Doc. No. 36 at 3–4.)  Abramov counters that although Konkrete Investments is a creditor as that term is defined by the Act, it also qualifies as a debt collector because it used a name other than its own (i.e., Watchmen Property Management) when it attempted to collect the unpaid rent.  (Doc. No. 38 at 7.)  He also argues that he has pleaded sufficient facts to show that Konkrete Investments violated the FDCPA

---

[3] As a reminder, *see supra* n.2, although the Landlord Defendants move to dismiss the FDCPA claims as against all of them, the Second Amended Complaint brings statutory claims against only Konkrete Investments (*see* Doc. No. 34 at ¶ 56).

through its "oppressive, abusive, and harassing" conduct and by misusing the corporate form to avoid liability.  (*Id*. at 9–10.)  The Court addresses each issue in turn.

### 1.    <u>Debt Collector</u>

For the FDCPA's protections to apply, a plaintiff must allege facts tending to show that the defendant is a debt collector.  A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  A creditor[4] generally is not considered a "debt collector," because collecting debts is often not the "principal purpose" of a creditor's business, and when it does attempt to collect a debt, it is typically a debt owed to itself and not one owed to "another."  *See Tepper v. Amos Fin.*, 898 F.3d 364, 366 (3d Cir. 2018) ("Creditors—as opposed to 'debt collectors'—generally are not subject to the Act." (quotation marks omitted and alterations adopted)); *Carlson v. Long Island Jewish Med. Ctr.*, 378 F. Supp. 2d 128, 130–31 (E.D.N.Y. 2005) ("[B]y its terms, the FDCPA limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts.").

As Abramov notes, however, the FDCPA recognizes an exception under which a creditor is nevertheless considered a "debt collector" if "in the process of collecting [its] own debts, [the creditor] uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).  This is known as the false-name exception, and it has "three components:  a creditor must (1) use a name other than its

---

[4] The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom such a debt is owed."  15 U.S.C. §1692a(4).

own (2) in a way that would indicate a third person is attempting to collect its debt (3) in the process of collecting its own debt." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019).

To determine whether the false name exception applies, courts consider "whether, under the particular factual circumstances present, the 'least sophisticated consumer would have the false impression that a third party was collecting the debt'" on the creditor's behalf. *Carlson*, 378 F. Supp. 2d at 131 (quoting *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998)). This is "an objective standard," under which "the collection effort is to be 'assessed in terms of the impression likely to be left upon the unsophisticated consumer.'" *Id.* (quoting *Maguire*, 147 F.3d at 236); *accord Pinson*, 942 F.3d at 1209; *Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc.*, 471 F.3d 780, 782 (7th Cir. 2006).[5] For example, courts often decline to find the false-name exception applies when there is substantial similarity between the creditor's name and the name used in the debt collection communication, reasoning that even the least sophisticated consumer would understand the entities are related and that the communication is, in fact, from the creditor or a related entity. *See, e.g.*, *Pinson*, 942 F.3d at 1210–11 (finding the false-name exception inapplicable because "even the least sophisticated consumer would understand that JPMorgan Chase and Chase Home Finance were related

_____

[5] The Third Circuit has not considered the false-name exception in depth, but the Second, Seventh, and Eleventh Circuits have all held that "the false-name exception applies when the 'least sophisticated consumer' would believe a third party was involved in collecting a debt." *Pinson*, 942 F.3d at 1209; *see Catencamp*, 471 F.3d at 782; *Maguire*, 147 F.3d at 236. The Court finds the reasoning of *Pinson*, *Catencamp*, and *Maguire* persuasive. *Cf. Magness v. Walled Lake Credit Bureau, Inc.*, 2014 WL 12610219, at *5 (E.D. Pa. Feb. 18, 2014) ("The Third Circuit has not addressed the false name exception in depth. However, we find a recent Second Circuit decision to be instructive."). Plus, the false-name exception is consistent with the Third Circuit's holding that to give full effect to the FDCPA's remedial purpose, the Act "must be construed broadly," *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015), and courts should consider whether a communication violates the FDCPA from the "perspective of the least sophisticated debtor," *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 594 (3d Cir. 2020).

entities"); *Berk v. J.P. Morgan Chase Bank, N.A.*, No. 11-2715, 2011 WL 4467746, at *4 (E.D. Pa. Sept. 26, 2011) ("No reasonable person would find that 'Chase Auto Loans' is a false identification of . . . JPMorgan Chase Bank"). Similarly, courts have suggested that the false-name exception does not apply when the creditor, although not using its full business name, nevertheless uses a "name under which it usually transacts business," "a commonly-used acronym," or the name "that it has used from the inception of the credit relation" with the debtor. *Maguire*, 147 F.3d at 235 (quotation marks omitted). By contrast, if the creditor "'pretends to be someone else' or 'uses a pseudonym or alias,'" then the false-name exception applies, and the creditor is considered a "debt collector" subject to the FDCPA's restrictions. *Carlson*, 378 F. Supp. 2d at 131 (quoting *Maguire*, 147 F.3d at 235); *accord Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013).

Abramov argues that the false-name exception applies here because Konkrete Investments attempted to collect past due rent under the name "Watchmen Property Management," and thus, wrongly suggested that an independent, third party was attempting to collect the owed rent on its behalf. (Doc. No. 38 at 9.) The Landlord Defendants did not file a reply brief, nor have they otherwise addressed this issue. Taking the allegations in the Second Complaint as true, as we must at this stage, the Court finds Abramov has plausibly alleged that Konkrete Investments qualifies as a debt collector under the Act's false-name exception.

The facts in this case are similar to those in *Fleming v. Greystar Mgmt. Servs., L.P.*, in which the plaintiff claimed her landlord, Greystar Management Services, violated the FDCPA when it wrongly charged her "a number of fees" and attempted to collect those fees under the name "Advantage Solutions Receivables." No. 2:15-CV-00174-SMJ, 2016 WL 4491846, at *1 (E.D. Wash. Aug. 25, 2016). Greystar moved for summary judgment on the plaintiff's FDCPA

claims, arguing that it was a creditor, not a debt collector, because Advantage Solutions Receivables was a related entity, which Greystar used to collect a debt owed to itself.  *Id.* at *5. Greystar also argued that the false-name exception did not apply because the plaintiff ought to have known that the collection email came from a company associated with Greystar.  *Id.* at *6. It noted that the collection email was sent using the email address "wsimmons@greystar.com" and with an email signature that read, "Will Simmons | Specialist, Advantage Solutions Receivables," with the second line, "*Greystar* | PO Box 2706."  *Id*. at *2, 6 (emphasis added). The court disagreed.  It found that, despite the clues in the collection email, the least sophisticated consumer would not necessarily have made the connection between the two companies, given the dissimilarity in the names "Greystar" and "Advantage Solutions Receivables" and the fact that the sender, Will Simmons, "very intentionally presented himself as an intermediary between Fleming and her former property manager" for purposes of collecting the unpaid fees.  *Id*. at *6.

Like the email in *Fleming*, Abramov's collection email was sent from a company that had an unclear connection to Konkrete Investments.  The name "Konkrete Investments LLC" is just as dissimilar to "Watchmen Property Management," as "Advantage Solutions Receivables" is to "Greystar."  *See id.*; *cf. Pinson*, 942 F.3d at 1210 (finding that "even the least sophisticated consumer would understand that JP Morgan Chase and Chase Home Finance were related entities" and therefore, the debt collection communication from Chase Home Finance did not suggest that a third party was attempting to collect the debt owed to JP Morgan Chase).  And although the domain name for the Watchmen Property email address contained the term, "konkreteinvestments," that domain name was only visible when Abramov expanded the sender designation.  The Court cannot find as a matter of law that the least sophisticated consumer

would take such steps.  And even if the domain name had been apparent on the face of the May 13, 2024 email, this Court, like the court in *Fleming*, cannot find as a matter of law that the least sophisticated consumer would have necessarily inferred a connection between Watchmen Property and the Landlord Defendants based solely on that domain name.  *See Pinson*, 942 F.3d at 1210 (describing the "least sophisticated consumer standard" as a "low bar").

To be sure, Abramov's prior communications with the Landlord Defendants and Watchmen Property differentiate this case from *Fleming*.  In particular, before the May 13, 2024 email, Abramov was told that the proper email address to contact Konkrete Investments was watchmenpm@gmail.com.  (*Id.* at 106.)  And when Abramov sent his first message to that email address, he received an automatic reply from Bullard.  (Doc. No. 34 at 8; *see also* Doc. No. 24 at 126 (listing "Shawn Bullard <watchmenpm@gmail.com>" as the sender).)  Taken together, it is possible that the least sophisticated consumer receiving these messages would have understood that Watchmen Property was not an independent third party, but one more name under which Konkrete Investments (and Bullard) leased and managed rental properties, including Abramov's.  *See Pinson*, 942 F.3d at 1211 ("The perspective of the least sophisticated consumer arises from the totality of circumstances . . . .").  But it is also possible that the least sophisticated consumer would have assumed that its property management company—which had a dissimilar name and had never been explicitly identified as a corporate affiliate of Konkrete Investments—was an independent entity.  That is enough to survive dismissal.  *See Carlson*, 378 F. Supp. 2d at 132 ("The liability of the Hospitals [under the false-name exception] turns on facts that cannot be determined in the context of a motion to dismiss.  Among those facts are the business of RCRS and the nature of its corporate relationship with the Hospitals.  It is also important to determine the nature of the contacts among the Hospitals, RCRS and Plaintiffs.  It is only when these facts

are clarified that the court will be in a position to determine whether the least sophisticated consumer would have believed that the Hospitals or an unrelated third party was attempting to collect a debt."); *cf. Pinson*, 942 F.3d at 1210 (acknowledging that "whether a plaintiff pleads enough facts to state a claim is a question of law for the court," but nevertheless finding that "[w]hether the least sophisticated consumer would think a name indicates a third party's involvement in collecting a debt will ordinarily present a jury question").

Taking Abramov's factual allegations as true and viewing them in the light most favorable to him, the Court finds he has plausibly alleged that the false-name exception applies and that Konkrete Investments is properly considered a debt collector under the FDCPA.[6]

## 2.    FDCPA Violation

In the alternative, the Landlord Defendants argue that Abramov's FDCPA claims fail because he has not alleged a violation of the Act.  (Doc. No. 36-1 at 7.)  The Landlord Defendants' argument on this issue is limited to a single, conclusory sentence:  "Even if Plaintiff had properly alleged that [Konkrete Investments] was a debt collector, his FDCPA claims still fail because he does not sufficiently allege facts to support a plausible inference that [Konkrete Investments] violated a provision of the FDCPA in attempting to collect a debt."  (Doc. No. 36-1 at 7.)  This argument fails because a plaintiff who plausibly alleges that the false-name exception applies, also plausibly alleges a violation of the Act.  *See* 15 U.S.C. § 1692e(14) ("A debt collector may not use any false, deceptive, or misleading representation or means in connection

---

[6] The Landlord Defendants also argue that landlords and management companies, like Konkrete Investments, are typically not liable under the FDCPA.  This is true, but only because landlords are creditors, and as discussed above, creditors are usually not considered "debt collectors" under the Act. Here, however, Abramov has sufficiently alleged that unlike a typical landlord, Konkrete Investments may qualify as a debt collector and be subject to the FDCPA's restrictions. *See Daniels v. Baritz*, No. CIV.A. 02-CV-79292003, WL 21027238, at *3 (E.D. Pa. Apr. 30, 2003) (denying motion to dismiss landlord defendants where the plaintiff sufficiently alleged that the "Landlords fall within the definition of 'debt collector' pursuant to the FDCPA").

with the collection of any debt . . . . [T]he following conduct is a violation of this section: . . . . The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."); *Catencamp*, 471 F.3d at 781; *Magness*, 2014 WL 12610219, at *5 & n.3; *Hutt v. Albert Einstein Med. Ctr.*, No. Civ.A. 04-03440, 2005 WL 2396313, at *7 (E.D. Pa. Sept. 28, 2005).[7]

*    *    *

In sum, Abramov has sufficiently alleged that Konkrete Investments qualifies as a debt collector under the FDCPA and that it violated a provision of the Act when it used the name "Watchmen Property Management" to send the May 13, 2024 collection email.  Accordingly, the motion to dismiss is denied as to his FDCPA claims.

### B.    Claims Against Shawn Bullard

That leaves the Landlord Defendants' motion to dismiss all claims asserted against Bullard.  They argue that Bullard is not a proper defendant in this lawsuit because Abramov has failed to allege facts to support piercing the corporate veil as to him.[8]  (Doc. No. 36-1 at 8 (asserting that Abramov "improperly seeks to hold Shawn Bullard personally liable for actions allegedly taken by a business").)  Abramov responds that "[j]ustice requires piercing the corporate veil" in this case because Bullard has misused the corporate form to "avoid litigation, commit torts, and breach" the lease agreement.  (Doc No. 38 at 11.)  He claims that Bullard uses

---

[7] Abramov argues that he has also sufficiently alleged violations of §§ 1692d and 1692f.  (Doc. No. 34 at 26.)  Given the lack of briefing by the Landlord Defendants on this issue and the Court's conclusion that Abramov has alleged a violation of § 1692e, the Court does not (and need not) address whether Abramov has also stated a claim under these other provisions.

[8] In Abramov's opposition brief, he argues that the veil should also be pierced between 1620 Cecil B. Moore LLC and Konkrete Investments LLC, such that each company may be held liable for the wrongful acts of the other (and the acts of other, nonparty affiliate companies).  Because this issue is not part of the Landlord Defendants' motion to dismiss, the Court does not address it in this Memorandum.

his companies—1620 Cecil B Moore LLC, Konkrete Investments LLC, Watchmen Properties, and others—interchangeably, disregarding their status as separate entities, to purposefully obfuscate the true landlord's identity and contact information on rental agreements with tenants. (*Id*. at 13–16.)  This conduct renders it virtually impossible for his tenants to exercise their rights to oppose improper fees and seek reparations for inhospitable living conditions.  (*Id.*)  And, Abramov claims, when tenants attempt to force communication by placing rent in escrow, Bullard uses his various entities to avoid personal liability for knowingly unlawful debt collection efforts and wrongful evictions.  (*Id.* at 15.)[9]

"A request to pierce the corporate veil is not an independent cause of action, but rather is a means of imposing liability established in an underlying cause of action, such as tort or breach of contract, against another."  *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1035 (Pa. 2018).  "There is a strong presumption in Pennsylvania against piercing the corporate veil."  *Mortimer v. McCool*, 255 A.3d 261, 268 (Pa. 2021) (quoting *Lumax Indus. Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995)).  Any court asked to do so must "start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception."  *Id.* at 278 (quoting *Lumax Indus. Inc.*, 669 A.2d at 895). "The corporate form may be disregarded 'whenever justice or public policy demand, such as when the corporate form has been used to defeat public convenience, justify wrong, protect

---

[9] Abramov also argues that Bullard uses the corporate forms to "defend crime," noting that Bullard has a "reputation for trespassing and stalking" his female tenants.  (Doc. No. 38 at 17–19 (referencing negative reviews left by female tenants online.))  But Abramov has not alleged that he experienced such conduct or shown that it is otherwise implicated in this lawsuit, such that it renders veil piercing appropriate under the causes of action brought here.  *Cf. Golden Gate Nat'l Senior Care LLC*, 194 A.3d at 1035 (explaining that veil piercing is "not an independent cause of action" but instead, "a means of imposing liability" for an underlying cause of action).

fraud, or defend crime.'" *Id.* (quoting *Golden Gate Nat'l Senior Care LLC*, 194 A.3d at 1034–35).

The Pennsylvania Supreme Court has favorably cited multiple factors relevant to the piercing inquiry, including "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to perpetuate fraud." *Id.* (quoting *Lumax Indus. Inc.*, 669 A.2d at 895); *see also Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1521 (3d Cir. 1994) (describing various "[e]vents that permit the corporate veil to be pierced"). However, the court has also explicitly "resisted the temptation to formalize the inquiry with an ever-increasing number of predefined factors." *Mortimer*, 255 A.3d at 286; *see also id.* at 268 (recognizing Pennsylvania's piercing doctrine suffers from "a lack of clarity that often arises with equitable doctrines, which resist reduction to prescriptive tests, tending by historical design toward holistic, case-by-case analyses").

The Landlord Defendants argue that Abramov has not alleged any facts that plausibly suggest the relevant factors are met. (Doc. No. 36-1 at 9.) The Court disagrees. Although Abramov has not provided any allegations as to some of the relevant factors—including undercapitalization and "substantial intermingling of corporate and personal affairs"—he has alleged facts to suggest that certain corporate formalities have been disregarded and other officers and directors of the Company Defendants "were not functioning." *Village at Camelback Props. Owners Ass'n v. Carr*, 538 A.2d 528, 535 (Pa. Super. Ct. 1988) (considering various factors, including whether "the corporations failed to observe corporate formalities" and whether "other officers and directors, if any, of the corporations were not functioning"). Specifically, Abramov alleges that the companies have not maintained their filings with the Pennsylvania Secretary of State, failing to keep a valid registered address for notice purposes. (Doc. No. 24 at

83–88.)  In addition, he alleges that despite Maggie Bullard's formal role as an owner of Konkrete Investments LLC and an employee for Watchmen Property, she does not in fact perform those roles.  (Doc. No. 34 at 2, 8–9.)  He notes that when he went to the 1611 Montgomery Ave address (which is the registered address for 1620 Cecil B. Moore, LLC) to confront Maggie Bullard about the erroneous fees and sanitation issues associated with the Premises, she denied being a representative of Konkrete Investments (despite being a co-owner of the company), denied that she was Abramov's landlord, refused to accept notice despite being a company representative, and denied that the Montgomery Ave address was associated with Abramov's landlord.  (*Id.* at 7–9.)

But even if Abramov had not satisfied any of the relevant factors, it would not necessarily end the inquiry because as noted above, the Pennsylvania Supreme Court recently reiterated its stance that veil piercing should not be a "formalize[d] inquiry" that focuses on rote application of "predefined factors."  *Mortimer*, 255 A.3d at 286; *see also id.* ("[A] rigidly formalistic approach only subverts the goal of equity."); *cf. Fletcher-Harlee Corp. v. Szymanski*, 936 A.2d 87, 95 (Pa. Super. Ct. 2007) (acknowledging that the Pennsylvania Supreme Court has found the factors "to be important considerations in determining whether a party overcame the strong presumption of the validity of a corporation's status as such," but nevertheless, emphasizing that "there appears to be no clear test or well settled rule in Pennsylvania as to exactly when the corporate veil can be pierced and when it may not be pierced" (quotation marks omitted)).  Instead, the court has opted for "simplicity" and broadly framed its piercing jurisprudence as one which can be "reduce[d] to a two-pronged test:  First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and second, adherence to the corporate fiction under the circumstances would sanction fraud or promote

injustice." *Mortimer*, 255 A.3d at 86–87 (quotation marks omitted); *see also Kaplan*, 19 F.3d at 1521 ("In short, the evidence must show that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes."); *Fletcher-Harlee Corp.*, 936 A.2d at 96 ("In deciding whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholders' traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operations of the dominant shareholder.").

The D.C. District Court applied a nearly identical, two-prong approach in a case similar to this one. *See Bonilla-Santiago v. BLB Privatized Housing, LLC*, Civil Action No. 20-cv-2524 (TSC), 2022 WL 990681, at *7 (D.D.C. Mar. 31, 2022) ("Properly enunciated, the D.C. veil-piercing doctrine requires (1) unity of ownership and interest between the entities, and (2) either use of the corporate form to perpetrate fraud or wrong, or other considerations of justice or equity justify it." (quotation marks omitted)).  In *Bonilla-Santiago*, the plaintiffs leased a townhome owned by one of the defendants, BLB Privatized Housing, LLC.  *Id.* at *1.  After moving into the townhome, the plaintiffs began having serious health issues and noticed the townhome suffered from a substantial rodent infestation.  *Id.* at *1–2.  The plaintiffs' complaints about both problems went largely ignored, and they ultimately had to move to a new unit.  *Id.* The plaintiffs brought claims for negligence, breach of contract, and breach of the warranty of habitability against the landlord and multiple entities related to the landlord, including BLB Property Managers, LLC, Hunt Military Communities Management, LLC, and Hunt Companies Inc.  *Id.*  The non-landlord defendants moved to dismiss the claims against them, arguing that the plaintiffs had "not pled sufficient facts to suggest liability by piercing the corporate veil."  *Id.* at *6.  The court disagreed.

The court found that the plaintiffs had alleged facts to "suggest a plausible level of involvement and/or control by the various Defendants, such that . . . the corporate veil may be pierced." *Id.* Specifically, the plaintiff alleged that there was an "interconnectedness" between the companies, *id.* at *3, in that Hunt Companies Inc. established the other defendants as subsidiaries and all the companies shared the same principal place of business, *id.* at *1. And this "interconnectedness" was communicated to the plaintiffs "via the lease documents, as well as the email address" that residents were told to use "to contact management." *Id.* at *3. "Although Plaintiff signed a lease with landlord BLB Privatized Housing, LLC and property manager BLB Property Managers, LLC, the top of the lease's first page" included an insignia, "followed by 'Bolling Family Housing, A Hunt Military Community.'" *Id.* At the same time, other portions of the lease included the word "Hunt" as an insignia at the top, and residents were instructed to "email the property manager at a @huntcompanies.com email address." *Id.* The court found these inconsistencies made "it difficult for Plaintiffs to discern which company" was its landlord in truth, let alone which company "was responsible for specific instances of alleged harm" that rendered the townhome uninhabitable. *Id.* Accordingly, it found the facts "sufficient to support a plausible inference that the . . . Defendants who were not signatories to the lease were alter egos of the 'landlord' BLB Privatized Housing, LLC" and could also be sued for "Negligence/Premises Liability, Breach of Lease Agreement/Contract and Breach of Warranty of Habitability." *Id.* at *6.

Like the plaintiffs in *Bonilla-Santiago*, here, Abramov alleges that Bullard owns both Company Defendants and that he has disregarded their separate corporate forms in his real estate endeavors, interchangeably using the names of the two companies and a third company, Watchmen Property, in lease agreements and communications with tenants. *See Mortimer*, 255

A.3d at 278 ("Once an individual, individuals, or an entity elect to establish a corporation to gain the benefits of the business form, such persons and entities are not free to blur the lines of the capacity in which they act as it may suit them . . . ." (quotation marks omitted)).  Abramov has also alleged facts which suggest Bullard purposefully disregarded his company's separate forms to confuse tenants, avoid his regulatory and contractual duties as a lessor, and shield himself from liability for wrongful debt collection and eviction practices.  Such allegations are sufficient at this stage to plausibly suggest veil piercing is appropriate under Pennsylvania law, especially when the Court accounts for Abramov's pro se status.  *See Higgs*, 655 F.3d at 339 ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

In sum, Abramov has sufficiently alleged that piercing the corporate veil to hold Shawn Bullard personally liable for his companies' wrongful conduct may be necessary to "avoid injustice."  That is enough for Abramov to be entitled to discovery on this issue.  Whether Abramov will ultimately be able to prove that veil piercing is appropriate remains an open question to be decided after discovery.

## IV.    CONCLUSION

The Landlord Defendants' motion to dismiss is denied.  An appropriate order follows.